# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| South Carolina Coastal Conservation League, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> United States Army Corps of Engineers, Charleston District, *et al.*, <br><br> Defendants, <br><br><br> Tract 1 Timber, LLC, *et al.*, <br><br> Defendant-Intervenors. | Case No. 2:22-CV-2727-RMG <br><br><br><br> **ORDER AND OPINION** |

Before the Court is Plaintiffs' motion for consideration of extra-record evidence. (Dkt. No. 95). Federal Defendants and Defendant-Intervenors oppose Plaintiffs' motion. (Dkt. Nos. 96, 97). Plaintiffs replied. (Dkt. No. 99). For the reasons set forth below, Plaintiffs' motion is denied.

**I.    Background**

On May 6, 2022, the U.S. Army Corps of Engineers (the "Corps") issued a Clean Water Act ("CWA") permit authorizing Defendant-Intervenors to fill approximately 180 acres of wetlands pursuant to a mixed-use residential and commercial community on the Cainhoy Peninsula (the "Cainhoy Project"). (Dkt. No. 48, ¶ 1). Plaintiffs filed suit in this Court on August 17, 2022, arguing (among other claims) that Federal Defendants failed to comply with the National Environmental Policy Act ("NEPA") by relying on an Environmental Assessment ("EA") rather than an Environmental Impact Statement ("EIS") in approving the Cainhoy Project. (*Id.*, ¶ 6).

Federal Defendants lodged the initial administrative record on May 8, 2023, at which time Plaintiffs moved to compel Federal Defendants to supplement the record with predecisional

1

deliberative documents. (Dkt. Nos. 24, 25). This Court denied Plaintiffs' motion to compel production of the predecisional materials, but ordered the United States Fish and Wildlife Service ("FWS") to produce a privilege log listing such documents to ensure completeness of the record following the agency's inadvertent omission of certain documents in the initial lodging. (Dkt. Nos. 28, 31).

Shortly thereafter in November 2023, the Court granted the Parties' joint motion to hold the case in abeyance pending additional consultation under the Endangered Species Act. (Dkt. No. 39). The Court ordered the stay lifted in July 2024 following Federal Defendants' completion of their renewed environmental analyses. (Dkt. No. 47). Plaintiffs filed an Amended Complaint on July 26, 2024 (Dkt. No. 48) and motion for a preliminary injunction on August 1, 2024 (Dkt. No. 49), which this Court denied on September 19, 2024 following a September 17, 2024 hearing. (Dkt. Nos. 74, 76). Plaintiffs have appealed that denial to the Fourth Circuit. (Dkt. No. 79).

Federal Defendants lodged additional administrative records on November 15, 2024. (Dkt. No. 88). The Court issued a revised scheduling order directing the Parties to file any dispute regarding the completeness of the administrative record by December 16, 2024. (Dkt. No. 92). Plaintiffs filed their motion to supplement the record with two expert reports on December 16, 2024. (Dkt. No. 95).

## II. Legal Standard

The Administrative Procedure Act ("APA") provides for judicial review of final agency action. *See, e.g.*, *Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 629 n.3 (4th Cir. 2017). Under the APA, a "reviewing court shall. . . hold unlawful and set aside agency action, findings, and conclusions found to be. . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. "Review under this standard is highly

deferential, with a presumption in favor of finding the agency action valid." *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009) (citations omitted). Nonetheless, the review is not a "rubber-stamp" of agency action, and a court must engage in a "'searching and careful' inquiry of the record." *Id.* (citations omitted).

When reviewing an agency's decision, a court is instructed to review "the whole record or those parts of it cited by a party[.]" 5 U.S.C. § 706. The Supreme Court has made clear that this review must be made based on the "full administrative record that was before the [agency] at the time [it] made [the] decision*." Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420, (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). *See Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."). As explained by multiple courts, including district courts in the Fourth Circuit, "[t]he whole administrative record includes pertinent but unfavorable information, and an agency may not exclude information on the ground that it did not 'rely' on that information in its final decision." *Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Sec.*, No. CV ELH-16-1015, 2017 WL 3189446, at *7 (D. Md. July 27, 2017) (citing *Tafas v. Dudas*, 530 F. Supp. 2d 786, 793 (E.D. Va. 2008)). This means an agency must include all documents and materials "directly or indirectly" considered by the agency. *See Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993) (stating that "the administrative record consists of all documents and materials directly or indirectly considered by the agency."). *See also Thompson v. United States Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) ("The whole administrative record. . . consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position").

"Judicial review of administrative action is generally confined to the administrative record." *Fort Sumter Tours, Inc. v. Babbitt*, 66 F.3d 1324, 1335 (4th Cir. 1995). However, if an agency fails to produce a complete administrative record, a party may request that the record be supplemented. *Outdoor Amusement Bus. Ass'n, Inc.*, 2017 WL 3189446 at *12 (citing *Otsuka Pharm. Co. v. Burwell*, No. GJH-15-852, 2015 WL 1579127 (D. Md. Apr. 8, 2015)). An agency is "entitled to a strong presumption of regularity that it properly designated the administrative record," and therefore supplementation of the record is "the exception not the rule." *Id.* (citations omitted). Nonetheless, the presumption of regularity can be overcome when a Plaintiffs can: (1) 'identify reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record,' and (2) 'identify the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are 'likely' to exist as a result of other documents that are included in the administrative record[.]' *Id.* (citations omitted). Where a party is attempting to include documents considered by the agency, no showing of bad faith is required, and a Plaintiffs must only present "clear evidence," which means a "strong, substantial or prima facie showing that the record is incomplete." *Id.* Further, "[w]hile review of agency action is typically limited to the administrative record that was available to the agency at the time of its decision, a NEPA suit is inherently a challenge to the adequacy of the administrative record. That is why, in the NEPA context, courts generally have been willing to look outside the record when assessing the adequacy of an EIS or a determination that no EIS is necessary." *Ohio Valley*, 556 F.3d at 201. Courts have allowed such extra-record evidence in NEPA cases "in narrow circumstances such as when the evidence: (1) explains technical information or agency action not adequately explained in record; (2) shows an agency failed to consider relevant evidence; or (3) shows an agency, in bad faith, failed to include

4

information it considered in the record." *Hodges v. Abraham*, 253 F. Supp. 2d 846, 855 (D.S.C. 2002), *aff'd*, 300 F.3d 432 (4th Cir.).

### III.  Discussion

Plaintiffs move this Court to admit two expert reports that are not in the administrative record "to show the Corps failed to consider relevant evidence and to explain technical matters in the record." (Dkt. No. 99 at 6).  Federal Defendants and Defendant-Intervenors oppose Plaintiffs' motion, arguing it is untimely where it "relates to the U.S. Army Corps of Engineers' ('Corps') initial decision to issue the Clean Water Act ('CWA') permit associated with the Cainhoy project, for which the administrative record was lodged in May 2023, not the remaining administrative record for the permit modification that was lodged in November 2024." (Dkt. No. 96 at 2; Dkt. No. 97 at 2).  The permit modification was issued as a result of renewed consultation under the Endangered Species Act while the case was held in abeyance between November 2023 and July 2024. (*See* Dkt. No. 49-9) ("The modification . . . to [the Permit] consist of modifications, and additions, to the Special Conditions of the permit to ensure continued compliance with the Endangered Species Act of 1973.").  Defendants also argue that Plaintiffs have not met their heavy burden to prompt the Court to look beyond the administrative record. (Dkt. No. 96 at 2; Dkt. No. 97 at 2).

On reply, Plaintiffs argue that it would have been "futile" to supplement the record at an earlier date because they "had no ability to predict what Federal Defendants' final decision document (and thus administrative record) would—or most relevant here, would not—include until it was published in July 2024." (Dkt. No. 99 at 1).  In Plaintiffs' view, the renewed Endangered Species Act consultation "may have led the Corps to conclude an [EIS] was warranted"—potentially obviating Plaintiffs' need to supplement the record with additional

5

materials if an EIS was published. (*Id.* at 2-3). Per Plaintiffs, it was only after the Corps completed this supplemental review and decided not to revise the original May 2022 EA that Plaintiffs' motion to supplement the record to illustrate why Federal Defendants' decision not to issue an EIS was arbitrary and capricious became timely. (*Id.* at 3).

The Court finds Plaintiffs' rationale unpersuasive. Federal Defendants lodged the original administrative record on May 8, 2023. (Dkt. No. 24). The scheduling order in effect at that time allowed Plaintiffs 15 days from the Federal Defendants' deadline to lodge the administrative records to move to admit extra-record evidence. (Dkt. No. 23). Plaintiffs did not move to supplement the record with any extra-record evidence of their own, but sought to compel the production of predecisional deliberative materials. (Dkt. No. 25). The Parties did not jointly move to hold the case in abeyance until November 20, 2023—over six months after the administrative record was lodged. (Dkt. No. 38). To the extent Federal Defendants would have modified the EA or opted to issue an EIS following the abeyance period, that decision presumably would have arisen from the agencies' renewed Endangered Species Act consultation, rather than via additional analyses of traffic and flooding impacts that were addressed in the May 2022 EA and were not the subject of Federal Defendants' abeyance period review. The Court's November 20, 2024 Order was directed towards the remaining administrative records that were lodged following the abeyance period. (Dkt. No. 92). Notwithstanding that the Court considers Plaintiffs' motion untimely, the Court addresses the merits of the motion below.

### A. The Marshall Report

The first document offered by Plaintiffs is a report by Norman Marshall that evaluates the traffic impacts of the Cainhoy Project by reference to (1) the Clements Ferry Road Widening EA and (2) a Highway 41 Widening Traffic Study. (Dkt. No. 95-1) ("Marshall Report"). In Plaintiffs'

6

view, "the Corps determined that it did not need to assess the potentially significant impact the Development would have on local roadways because these impacts were already 'accounted for' in the widening of Clements Ferry Road and Highway 41," despite the fact that the Clements Ferry EA purportedly contains evidence that the Cainhoy Project will contribute to a failing level of service of the roadway in 2040. (*Id.* at 2-3).  The Marshall Report also cites the Charleston Long Range Transportation Plan, which "shows Highway 41 as operating as a failing level of service in 2045," which will presumptively require future road widenings which "are reasonably foreseeable impacts that are not mentioned in the Cainhoy EA but should have been disclosed and analyzed as part of a proper traffic assessment." (*Id.*).  The Marshall Report concludes that the Corps' failure to consider these traffic impacts is evidence of "the Corps' failure to consider important evidence in making its [Finding of No Significant Impact]."  (Dkt. No. 95-1 at 6); *see also Hodges*, 253 F. Supp. At 846 (extra-record evidence may be admissible in NEPA cases where "an agency failed to consider relevant evidence.").

The Court disagrees that Federal Defendants failed to consider relevant evidence regarding the traffic impacts of the Cainhoy development.  The Corps acknowledges throughout the EA that the traffic impacts of the Cainhoy development have been considered in undertaking other agency projects, including the widening of Clements Ferry Road (which itself was the subject of an EA).  *See, e.g.*,:

- Dkt. No. 49-5 at 107: "The development of the Cainhoy Plantation site was included in the CHATS transportation modeling, which means the future traffic generated by the development has been considered in the proposed widening of Clements Ferry Road and I-526 that are currently being designed for construction."

- *Id.* at 153: "The Cainhoy Plantation development was included in traffic predictions as the current road improvement project was being designed."

- *Id.* at 182-83: "[T]he traffic studies presented by the applicants . . . note that traffic impacts are already being assessed by SCDOT and Charleston and Berkeley Counties by the current widening of Clements Ferry Road, as well as by future planning efforts that include the potential widening of other existing roadways, such as SC Highway 41. Thus, beyond the fact that the more immediate cumulative impacts to traffic resulting from the initial phases of the applicants' project (and beyond) have already been accounted for in the planning and design of the current Clements Ferry Road Improvement project, the Corps recognizes that the Cainhoy Plantation development, as well as other future development in and around north Mount Pleasant, will result in the need for future transportation upgrades that would result in cumulative impacts over the course of the project's 30-year build out."

As illustrated throughout the EA, Federal Defendants acknowledge that traffic impacts of the Cainhoy Project "have already been accounted for in the planning and design of the current Clements Ferry Road Improvement project" and "any future DA permit application for proposed upgrades to roads such SC Highway 41 improvements, including the direct, indirect, and cumulative impacts of such a project, would be the subject of a separate, subsequent NEPA review by the Corps at that future time." (*Id.* at 186). The Court finds that the Marshall Report does not "show[] [the] agency failed to consider relevant evidence," but rather registers disagreement with the agencies' approval of the Clements Ferry Road Widening Project due to future foreseeable consequences of that project ( which are addressed in a separate EA). *Hodges*, 253 F. Supp. 2d at 855. The Court declines to consider the Marshall Report as extra-record evidence.

### B. The Young Report

Plaintiffs also seek to submit a report by Dr. Robert Young to supplement the Cainhoy Project EA's analysis of flooding impacts and impacts from docks. (Dkt. No. 95-2) ("Young Report"). Plaintiffs argue that the Young Report contains "missing data [which] significantly undermines the Corps' FONSI for Cainhoy" and "discusses important environmental factors not considered by the Corps related to both flooding and dock impacts." (*Id.*). Further, Plaintiffs highlight that the Young Report "explain[s] technical information included in the EA" but not

explained therein, including "what Base Flood Elevation requires for the site, the flaws in FEMA Flood Insurance Rate Maps, and how sea level rise will impact stormwater runoff on the site." (*Id.* at 7).

Federal Defendants argue that Young Report does not introduce any new information that is not already explained by documents in the existing administrative record. (Dkt. No. 96 at 10-11). They also note that "[t]he EA's discussion of such topics is readily accessible," such that the Young Report does not "explain[] technical information or agency action not adequately explained in record." (*Id.* at 11); *see Hodges*, 253 F. Supp. 2d at 855. The Court agrees. The EA is replete with discussion of the potential flooding impacts posed by the Cainhoy Project. *See, e.g.* Dkt. No. 49-5 at 20-21 (discussing floodplain management and FEMA flood mapping); *id.* at 88-91, 95-96 (addressing SELC comments regarding flooding); *id.* at 157 ("The proposed project will have a negligible short-term and long-term effect on potential flooding. The project is partially located in a [Special Flood Hazard Area]. A Special Condition is included in the DA permit and provided below in Section 11.2; the condition ensures that the applicants will comply with FEMA regulations, as well as local requirements. Compliance with local, state, and federal requirement will further ensure that the potential flood hazard impacts are negligible."). The EA clarifies that dock construction is governed by a separate, individual permitting process, such that it would be premature to consider any impacts caused by dock construction where Defendant-Intervenors did not apply for dock permits. *Id.* at 199-200. Because the Young Report does not "explain[] technical information or agency action not adequately explained in record" nor "show[] an agency

9

failed to consider relevant evidence," the Court declines to consider this extra-record evidence. *Hodges*, 253 F. Supp. at 855.

### IV.    Conclusion

In light of the foregoing, Plaintiffs' motion is **DENIED**. (Dkt. No. 95).

**AND IT IS SO ORDERED.**


                     s/ Richard M. Gergel
                     Richard Mark Gergel
                     United States District Judge

January 30, 2025
Charleston, South Carolina